## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

STATE OF FLORIDA, AGENCY FOR
HEALTH CARE ADMINISTRATION,

NANCY HALL,

and

ROLAND DICKERSON,

     *Plaintiffs,*

v.

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS,

and

SLOAN GIBSON, Acting Secretary of the
United States Department of Veterans
Affairs, in his official capacity,

     *Defendants.*

Case No._____

## COMPLAINT FOR DECLARATORY, INJUNCTIVE AND MANDAMUS RELIEF

## PRELIMINARY STATEMENT

1.     Through this action, the State of Florida, Agency for Health Care Administration

("AHCA"), and veterans Nancy Hall and Roland Dickerson (collectively, "Plaintiffs") seek to

compel the United States Department of Veterans Affairs ("VA") and Sloan Gibson, Acting

Secretary of the VA ("Secretary"; collectively, "Defendants"), to submit to external inspection and oversight of VA hospitals by AHCA, an objective, independent governmental authority.

2.    Upon information and belief, as a direct consequence of Defendants' refusal to submit to external oversight, Defendants have repeatedly failed to comply with minimum standards of patient safety in VA hospitals within the State of Florida.  As a result, Plaintiffs Hall and Dickerson, as well as other veterans and their family members eligible for services at VA hospitals, have been deprived of fundamental rights regarding standards of care, guaranteed by the VA's own Patients' Rights, 38 C.F.R. § 17.33, and attendant equal protection and due process guarantees of the Fifth Amendment to the United States Constitution.

3.    The VA's Patients' Rights unambiguously guarantees veterans eligible for services in VA hospitals, *inter alia*, "a right to be treated with dignity in a humane environment that affords them both reasonable protection from harm and appropriate privacy with regard to their personal needs," and "a right to receive … prompt and appropriate treatment for any physical or emotional disability." 38 C.F.R. § 17.33(a)(1), (2).  Defendants have wholly denied these rights to Plaintiffs Hall and Dickerson, and, upon information and belief, to countless other veterans and their family members in Florida.

4.    Moreover, Defendants have denied these rights without providing any meaningful pre- or post-deprivation mechanism by an objective, independent governmental authority like AHCA, to ensure compliance with Defendants' constitutional due process obligations.  As a result, veterans eligible for VA hospital benefits are denied equal protection under federal law, as compared with other similarly-situated groups, such as recipients of hospital benefits under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* ("Medicare") and Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* ("Medicaid").

5.      AHCA is the Florida agency charged with the duty "to provide for the protection of public health and safety in the establishment, construction, maintenance, and operation of hospitals . . . ." Fla. Stat. § 395.001.  Attendant to that duty, AHCA is specifically authorized to inspect all hospitals in the State of Florida, *see* Fla. Stat. §§ 395.002(12), 408.032(8), (11), and to investigate consumer complaints related to health care facilities, *see* Fla. Stat. § 20.42.  With respect to recipients of Medicare and Medicaid services, AHCA fulfills these duties in a classic cooperative federalism partnership with VA's sister agency, the United States Centers for Medicare and Medicaid Services ("CMS").

6.      By contrast with CMS, Defendants in this action have made abundantly clear to AHCA that they have no interest in partnering with AHCA to ensure the six VA hospitals and other VA-operated medical facilities in Florida meet minimum standards of patient care.

7.      AHCA is joined in this action because AHCA has received numerous troubling complaints from veterans in Florida like Hall and Dickerson that raise the prospect of sub-standard patient care and conditions in VA-operated hospitals.  AHCA has sought to fulfill its duty, required under Florida law, to investigate such complaints and inspect VA hospitals and records in the interest of public health and safety.

8.      The VA has rebuffed all such efforts and has even refused to meaningfully respond to AHCA's requests for public records lawfully made pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").  The VA's refusal to permit any such inspection or respond to FOIA public records requests, in the face of an ever-growing body of consumer complaint evidence, has led AHCA to be reasonably concerned that the VA is failing the very population it is charged by Congress with protecting: America's veterans and their families.

9.      Plaintiffs believe that Defendants' failures to ensure compliance with federal constitutional rights and rights prescribed by 38 C.F.R. § 17.33 is a direct consequence of the complete absence of external oversight by an objective, independent governmental authority of the VA's treatment of patients.

10.     Medical facilities in Florida and throughout the United States are subject to significant inspection by state and federal authorities, such as AHCA and CMS.   These regulations exist for sound policy reasons, as these facilities serve vulnerable populations seeking life-saving medical care.

11.     In sharp contrast to the intensive oversight intended to guarantee minimum standards of care in such facilities in Florida and generally, the VA has operated a nationwide network of facilities essentially free of objective, independent oversight.

12.     To AHCA, it is not important which state or federal agency actually provides meaningful objective, independent governmental oversight.   However, as provided above, AHCA already has the statutory duty and resources to provide the oversight required.

13.     In this action, Plaintiffs seek prospective injunctive relief pursuant to the United States Constitution and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Investigation*, 403 U.S. 388 (1971), and a writ of mandamus pursuant to 28 U.S.C. § 1361. Plaintiffs ask this Court to compel Defendants to comply with Plaintiff Hall's and Plaintiff Dickerson's constitutional and statutory rights to access to quality health care in a manner that: (a) fully complies with the VA's Patients' Rights, 38 C.F.R. § 17.33(a) and (g); and (b) is provided with objective, independent governmental oversight equal to that provided to recipients of other federal hospital benefits.

4

**JURISDICTION AND VENUE**

14.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1361, which provide for federal district court original jurisdiction in suits involving questions arising under federal law and suits to compel action by federal agencies, and 5 U.S.C. § 702, which permits suits by "person[s] suffering legal wrong because of agency action" that seek non-monetary relief. The actions challenged herein constitute violations of federal law, specifically, the VA Patients' Rights, 38 C.F.R. § 17.33, and the equal protection and due process guarantees of the Fifth Amendment to the United States Constitution.

15.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

**PARTIES**

16.     Defendant VA is a department of the United States government. Through the Veterans Health Administration, the VA operates a system of hospitals known as VA medical centers. 38 U.S.C. § 301, *et seq.* The VA operates six medical centers - West Palm Beach VA Medical Center, Bay Pines VA Healthcare System, James A. Haley Veterans' Hospital, Miami VA Healthcare System, Lake City VA Medical Center, Malcom Randall VA Medical Center - within the State of Florida that meet the definition of "hospital" under Florida law ("Medical Centers"). *See* Fla. Stat. § 395.002(12).

17.     Defendant Sloan Gibson, Acting Secretary of the VA, is responsible for the overall administration of the VA. The Secretary is sued in his official capacity.

18.     Plaintiff Nancy Hall served in the United States Army from 1984 until 1987, when she was honorably discharged. Hall is eligible to receive, and has received, VA-funded hospital care and medical services at a VA Medical Center.

19.     Plaintiff Roland Dickerson served in the United States Army from 1972 until 1978.  Dickerson is eligible to receive, and has received, VA-funded hospital care and medical services at a VA Medical Center.

20.     Plaintiff AHCA is the chief health policy and planning entity for Florida and is responsible for protecting the public health and safety in the maintenance and operation of hospitals within the State.    Fla. Stat. § 395.001.    AHCA is specifically charged with comprehensive duties relating to the inspection of health care facilities in Florida, including hospitals.  AHCA is also responsible for the investigation of complaints related to hospitals, *see generally* Fla. Stat. §§ 20.42, 395.0161, 408.811, and has a statutory duty to investigate complaints and inspect hospitals that are the subject of complaints received from individuals, organizations, or other sources, Fla. Stat. § 395.0161(1)(d).  AHCA fulfills these duties with respect to facilities treating patients eligible for services through other federal medical entitlement programs, including, among others, Medicare and Medicaid.    By contrast, the conduct of the VA and the Secretary alleged herein has systematically prevented AHCA from fulfilling these statutory directives with respect to the VA Medical Centers.

## BACKGROUND

21.     According to the VA, the Veterans Health Administration is America's largest integrated health care system, with more than 1,700 sites of care serving 8.76 million veterans each year.  In 2013, the VA served nearly a half million patients in Florida VA health care facilities.  *See* National Center for Veterans Analysis and Statistics, FY2013 Summary of Expenditures by State.  By statute, the Secretary "shall furnish hospital care and medical services" to the following veterans, among others:

   a.  Any veteran for a service-connected disability;

6

b. Any veteran who has a service-connected disability rated at 50 percent or more;

c. Any veteran who has a compensable service-connected disability rated less than 50 percent; and

d. Any veteran whose discharge or release from active military, naval, or air service was for a disability that was incurred or aggravated in the line of duty.

38 U.S.C. § 1710.

22.    VA-funded hospital care and medical services are also provided to some veterans who have suffered non-service-related disabilities in consideration of their prior service to their country. *See, e.g., id.* § 1710(a)(2)(D) (requiring hospital care and medical services for any veteran who is a former prisoner of war or who was awarded the Purple Heart); *id.* § 1710(e)(1)(D) (requiring hospital care, medical services, and nursing home care to a veteran serving during a period of war after the Persian Gulf, or in combat after November 11, 1998). Additionally, veterans who are unable to defray the expenses of necessary care may also be entitled to VA-funded hospital care and medical services, *id.* § 1710(a)(2)(G), such as when the veteran is eligible for Medicaid, receives a VA pension, or meets certain income thresholds, *id.* § 1722(a)-(b).  Further, the Secretary may furnish medical services to correct or treat any non-service-connected disability while a veteran is otherwise being served in a VA Medical Center. *Id.* § 1710(c).  Finally, VA health coverage is available to certain family members of certain veterans. *See, e.g., id.* § 1781 (covering spouses or children of veterans who are permanently and totally disabled, or who died serving our country); *id.* §§ 1803, 1821 (providing for veterans' children who have spina bifida); *see also, e.g., id.* §§ 1781(b), 1803(b); 38 C.F.R. § 17.901(c) (permitting those family members to use VA Medical Centers).

23. Plaintiff Hall is eligible to receive, and has received, VA-funded hospital care and medical services at a VA Medical Center. Specifically, Hall has received treatment at VA Medical Center James A. Haley Veterans' Hospital ("Haley VA Medical Center") in Tampa, Florida.

     a. Hall has experienced substantial delays in receiving treatment at Haley VA Medical Center, especially on nights and weekends. Most recently, Hall has had difficulty scheduling an ultrasound appointment and obtaining a sleep apnea mask as well as treatment for shoulder pain.

     b. Hall's late husband, who was also a veteran, received treatment at Haley VA Medical Center. Hall's husband died in 2005 from tongue cancer. After determining his cancer was terminal, Haley VA Medical Center employees apologized to Hall for not treating her husband's cancer aggressively enough. According to Hall, the treatment of her husband's cancer felt as though the medical staff were simply "going through the motions."

     c. In Hall's experience, while some staff members of Haley VA Medical Center seem truly interested in helping veterans, many others are disrespectful to patients and incompetent, particularly with regard to follow-up care without regard to its Patients' Rights obligations. According to Hall, there is no accountability at Haley VA Medical Center concerning patient treatment.

24. Plaintiff Dickerson is eligible to receive, and has received, VA-funded hospital care and medical services at a VA Medical Center. Specifically, Dickerson has received treatment at VA Medical Center Bay Pines VA Healthcare System ("Bay Pines VA Medical Center") in St. Petersburg, Florida.

a.    Dickerson has chronic obstructive pulmonary disease, post-traumatic stress disorder, and heart problems.

b.    In 2010, Dickerson received a heart catheterization at Bay Pines VA Medical Center, supposedly revealing minimum heart blockage.  In 2012, however, Dickerson learned that his medical records in 2010 showed a 69% blockage.  By the time Dickerson learned this, he had a 90% blockage.

c.    Ultimately, Dickerson was required to undergo emergency bypass surgery at Tampa General Hospital, a non-VA hospital.  Before going to Tampa General Hospital, Dickerson attempted to obtain treatment at another non-VA hospital, St. Petersburg General Hospital, but was informed that the hospital would not treat him due to "previous poor medical care at Bay Pines."

d.    Additionally, Dickerson waited over one year to obtain an appointment for a simple eye exam at Bay Pines VA Medical Center.  Dickerson has also had numerous appointments at Bay Pines VA Medical Center cancelled without reason and without any attempt to reschedule by the VA Medical Center.

e.    As a result of the poor care Dickerson has received at Bay Pines VA Medical Center, Dickerson's wife has resorted to buying costly private insurance so that so that Dickerson may receive quality medical treatment at non-VA facilities outside the St. Petersburg area.  Mrs. Dickerson has also taken on extra shifts and worked overtime to pay for this insurance, and so that she could pay for Mr. Dickerson's emergency surgery at Tampa General Hospital.  According to Mrs. Dickerson, "They're not doing their job at Bay Pines, and they don't care."

9

25.    Over the past several months, AHCA has received numerous complaints of deplorable conditions at various VA Medical Centers in Florida similar to those complaints raised by Plaintiffs Hall and Dickerson that, if substantiated, constitute clear violations of federal and Florida public health and safety laws.  As provided above, AHCA has an unambiguous statutory duty to investigate complaints relating to violation of Florida public health and safety laws, and to inspect hospitals that are the subject of such complaints.  Fla. Stat. § 395.0161(1)(d).

26.    Some of the complaints AHCA received about VA Medical Centers from veterans, their family members, and others include the following:

a.    A veteran complained of serious issues related to patient safety, stating that he observed patients sitting in urine and feces for more than 12 hours, and also observed both mold and fruit flies in his room.  The veteran further stated that VA patients were regularly transferred to emergency rooms due to the lack of documentation of patient conditions, that VA hospital staff inexplicably disappear for hours at a time, and that there is no accountability for employee actions.

b.    Another veteran complained of serious issues related to his admission to a VA Medical Center and the treatment he received there. He stated he was treated and released with minimal medications, and that when he returned for further treatment, he could not use the toilet because it was smeared with feces and remained so for a period of three hours.  This veteran further stated that he observed black mold in the shower room and both black mold and bloody bandages on the bathroom floor.

c.    Another veteran told AHCA that his cancer treatment was delayed for more than a year by the VA Medical Center.

10

d.      Another veteran reported a six-month wait in response to his request for an appointment before ultimately being told that the facility was not accepting any more veterans.

e.      A veteran's spouse complained that wait lists were causing otherwise avoidable lifetime disabilities.

f.      A veteran's daughter told AHCA that her father was abused, mistreated, and misdiagnosed, and that, as a consequence, the family was forced to remove him from a VA Medical Center to seek treatment elsewhere.

g.      Another veteran's family member complained of the VA's failure to allow state inspectors access to a VA Medical Center, and stated the incompetence of VA Medical Center personnel resulted in the death of another person in her father's unit.

h.      Another veteran's niece lamented that hours-long waiting times and extended periods between critical follow-up appointments ultimately resulted in the veteran's death.   She also reported that a veteran had a healthy kidney erroneously removed during an operation.

i.      One person told AHCA that complaints are being buried by the Medical Center directors, who use secret peer reviews to cover up for their staff.

j.      AHCA has also received a complaint from a VA Medical Center employee alleging that veterans were addressed in a derogatory manner by employees at that VA Medical Center and that there exists a culture of bullying by Medical Center staff.  The employee also reported discrimination against disabled veterans, noting the Medical Center bathrooms labeled "handicapped-accessible" could not be independently accessed by a person in a wheelchair.  The employee further stated that there is no

11

interest in addressing these issues, and noted that there is pressure exerted on those employees who report the issues.  According to the employee, staff members conceal critical errors, and those in leadership positions inconsistently follow protocol and fail to objectively investigate reported issues.

27.     The complaints AHCA received are replete with references to long wait times, lack of attention, unsanitary conditions, and improper medical care.  These troubling reports submitted to AHCA by veterans, their families, and others were echoed by reports of injuries and deaths of veterans at VA medical centers around the country.  Accordingly, in April 2014, Florida Governor Rick Scott ordered AHCA to undertake inspections of VA Medical Centers in Florida.

28.     In accordance with the Governor's directive and AHCA's statutory obligation to investigate complaints of unsafe conditions in Florida hospitals, AHCA attempted to inspect VA Medical Centers on several occasions.  On each such occasion, AHCA's inspectors were denied access, as follows:

        a.      On April 3, 2014, AHCA attempted to inspect the VA Medical Center located at 7305 North Military Trail, West Palm Beach, Florida.  AHCA's surveyors were denied access to hospital records for review and then were escorted from the premises.

        b.      On April 8, 2014, AHCA attempted to inspect Bay Pines VA Medical Center located at 10000 Bay Pines Boulevard North, St. Petersburg, Florida, but its surveyors were denied access to inspect that facility and its records.

        c.      On April 9, 2014, AHCA was denied access to inspect Haley VA Medical Center located at 13000 Bruce B. Downs Boulevard, Tampa, Florida.  The Medical

Center's chief of staff stated the hospital would not provide information to AHCA pursuant to instructions received from the VA.

       d.     On April 10, 2014, AHCA attempted to inspect the VA Medical Center located at 1201 NW 16th Street, Miami, Florida, but was denied access to that facility and its records.

       e.     On April 14, 2014, AHCA attempted to inspect VA Medical Centers located at 1601 SW Archer Road, Gainesville, Florida and 619 South Marion Avenue, Lake City, Florida, but was denied access to inspect the facilities and their records. AHCA made a subsequent attempt to inspect the VA Medical Center in Gainesville on May 19, 2014, and access was again denied.

       29.     Will A. Gunn, general counsel of the VA, expressed adamant opposition to AHCA's objective, independent oversight and inspections through communication with Governor Scott and AHCA Secretary Elizabeth Dudek, stating "VA medical facilities, as components of the Federal government, are generally not subject to state law."

       30.     Mr. Gunn's letters do not cite any federal authority supporting his contention that VA Medical Centers located in Florida are not subject to the State's laws enacted to protect the health, welfare, and safety of Floridians – including veterans and their family members – who receive care and treatment in Florida VA hospitals.

       31.     Moreover, irrespective of whether the VA is obligated to submit to inspection by Florida regulators, it is beyond dispute that the VA has full congressional authority to consent to inspection by Florida regulators, and the VA has exercised such authority in the recent past. As an example, in VHA Directive 2012-022, issued September 4, 2012, the VA's Undersecretary of

Health directed that "all VA medical centers ... must comply with their own state laws for reporting abuse and neglect." VHA Directive 2012-022 is still in force.

32.     Accordingly, it is clear that the Secretary could at any time issue a directive, analogous to VHA Directive 2012-022, to instruct VA medical centers in Florida to cooperate with AHCA and begin meaningful inspections.

33.     What is particularly troubling about the VA's stated position is that, upon information and belief, no one but the VA is ensuring that the VA Medical Centers in Florida are protecting the health, safety, and personal dignity of veterans. In other words, if the VA is not subject to AHCA's inspections, there is no external oversight whatsoever by an objective, independent governmental authority. The VA is, in essence, left to hold itself accountable for its own duties. In this, it has failed.

34.     Adding to concerns that the VA is not competent to regulate itself, "concerned employees" at the West Palm Beach VA Medical Center wrote to Governor Scott in April 2014 to report more troubling incidents at that VA Medical Center and to implore Governor Scott "to provide real quality oversight." *See* Exh. 1 (attached).

35.     AHCA is the agency in Florida responsible for health care facility inspection and investigation of consumer complaints. *See* Fla. Stat. § 20.42(3). Health care facilities include hospitals. *See* Fla. Stat. §§ 395.002(12), 408.032(8), (11). AHCA is statutorily authorized and directed to inspect hospital premises and review hospital records in Florida. *See* Fla. Stat. §§ 395.0161, 395.0162.

36.     Florida law defines a hospital, in pertinent part, as any establishment that: (a) offers services more intensive than those required for room, board, personal services, and general nursing care, and offers facilities and beds for use beyond 24 hours by individuals requiring

diagnosis, treatment, or care for illness, injury, deformity, infirmity, abnormality, disease, or pregnancy; and (b) regularly makes available at least clinical laboratory services, diagnostic X-ray services, and treatment facilities for surgery or obstetrical care, or other definitive medical treatment of similar extent.  Fla. Stat. § 395.002(12).

37.   VA Medical Centers in Florida meet Florida's statutory definition of "hospitals," and are not exempted from the definition.  As a matter of Florida law, AHCA is required to inspect VA Medical Centers and investigate complaints arising from those facilities, just as AHCA would be required to perform these functions with respect to any other hospital in Florida.

38.   As described above and consistent with AHCA's clear legislative directive, AHCA sought on numerous occasions to inspect VA Medical Centers, but has been systematically refused access to the hospitals and records.

39.   Indeed, the VA has thus far refused to respond to AHCA's requests for public documents pursuant to FOIA.  On April 30, 2014, after AHCA inspectors had been denied access to numerous medical centers, Secretary Dudek made a FOIA request for information relevant to patient safety at VA Medical Centers, including, *inter alia*, "[a] description of the facility's internal incident reporting system"; "[a] description of the manner in which documentation of the regular and systematic review of incident reports is kept"; "[d]ocumentation of the development and institution of the investigation and analysis of the frequency and causes of incidents causing injury to patients"; and "[d]ocumentation of the development of measures to minimize the risk of injuries to [certain] patients."

40.   The VA failed to respond to, or to even acknowledge, Secretary Dudek's records request within the statutory time period allotted under FOIA.

41.     AHCA has suffered a direct and continuing injury as a result of the VA's stated position that it is not subject to inspections.  The VA's position has rendered AHCA unable to meet its statutory duty to protect the health and safety of veterans and their family members who receive care and treatment in VA Medical Centers located in Florida.

42.     The VA's position that it is not subject to inspection also constitutes a direct and continuing injury to Plaintiffs Hall and Dickerson, and other similarly situated Florida veterans.

## COUNT I – SUBSTANTIVE DUE PROCESS

43.     Plaintiffs repeat and reallege the allegations set forth within paragraphs 1 through 42 of this Complaint as if fully set forth herein.

44.     This action arises out of the Constitution of the United States.  The Plaintiffs seek to redress violations of the Fifth Amendment to the United States Constitution.

45.     Veterans and their family members eligible for hospital care and medical services at VA Medical Centers have a fundamental right to receive such services, the parameters of which are defined by 38 U.S.C. § 1710 (defining eligibility and mandating the provision of hospital care and medical services to eligible veterans) and § 1701 (defining "medical services" and "hospital care").

46.     The VA Patients' Rights, 38 C.F.R. § 17.33, further guarantees eligible veterans receiving such services have the rights to (1) "be treated with dignity in a humane environment that affords them both reasonable protection from harm and appropriate privacy with regard to their personal needs," and (2) "receive … prompt and appropriate treatment for any physical or emotional disability." *Id.* § 17.33(a)(1), (a)(2).

47.     Furthermore, Congress ordered the VA Secretary to "ensure that the system will be managed in a manner to ensure that the provision of care to enrollees is timely and acceptable in quality." 38 U.S.C. § 1705(b)(3).

48.     The basic rights to prompt and appropriate medical services, treatment in a safe environment, and enrollment in a system "managed in a manner to ensure that the provision of care to enrollees is timely and acceptable in quality" are property or liberty interests, or both, protected by the Due Process Clause of the Fifth Amendment to the United States Constitution.

49.     The Secretary's failures to provide appropriate medical care and treatment, to uphold Patients' Rights, and to manage the VA's Medical Centers in a manner that ensures the timely provision of care that is acceptable in quality, unconstitutionally deprive Plaintiffs Hall and Dickerson of property or liberty, or both, in violation of substantive due process guaranteed by the Due Process Clause of the Fifth Amendment to the United States Constitution.

## COUNT II – PROCEDURAL DUE PROCESS

50.     Plaintiffs repeat and reallege the allegations set forth within paragraphs 1 through 42 of this Complaint as if fully set forth herein.

51.     Plaintiffs Hall and Dickerson have property or liberty interests, or both, protected by procedural due process guaranteed in the Due Process Clause of the Fifth Amendment to the U.S. Constitution. The current available procedures do not afford disabled veterans, such as Hall and Dickerson, the ability to raise concerns about medical care and violations of Patients' Rights to the VA thereby denying Hall and Dickerson due process of law. Further, because an essentially nonexistent procedure is constitutionally inadequate, Hall and Dickerson are not required to exhaust it.

52.     The lack of any external oversight by AHCA, an objective, independent governmental authority, coupled with an inadequate grievance process, have completely, unreasonably, and unjustifiably foreclosed Plaintiffs' ability to pursue and present grievances, claims for medical services, and other claims to challenge VA practices.

53.     As a result, Plaintiffs have been deprived of procedural due process of law, in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution.

## COUNT III – EQUAL PROTECTION

54.     Plaintiffs repeat and reallege the allegations set forth within paragraphs 1 through 42 of the Complaint as if fully set forth herein.

55.     This action arises out of the Constitution of the United States.  Plaintiffs seek to redress violations of equal protection guaranteed by the Fifth Amendment to the United States Constitution.

56.     Medicare is a federal program that provides for, among other things, hospital care for people who are 65 years of age or older, certain younger people with disabilities, and people with End-Stage Renal Disease.

57.     Medicaid is a federal program that establishes a federal-state cooperative cost-sharing program to provide, among other things, medically necessary assistance, including hospital care, to families and individuals with low income and insufficient resources to provide for such services.

58.     Medical services paid for by the VA represent a third type of federally-run medical assistance program.  The VA has replaced Medicare as the primary payer of services rendered to veterans.  Congress requires the Secretary of the VA to "furnish hospital care and medical services" to veterans with service-connected disabilities.  38 U.S.C. § 1710(a)(1), (a)(2).

18

VA hospitals are not permitted to seek reimbursement from other federal service providers, like Medicare. See 42 U.S.C. §§ 1395f(c); 1395n(d); 1395y(a)(2), (3).

59.  Medicare- and Medicaid-eligible facilities in Florida are subject to external oversight by objective, independent governmental authorities, including AHCA. The VA alleges that its Medical Centers are not subject to such oversight. According to the VA, its Medical Centers are only subject to oversight and regulation by the VA itself. The current system is woefully inadequate and provides veterans and their family members with no meaningful opportunity to lodge complaints or seek redress from an objective, independent governmental authority. Consequently, the current system results in an arbitrary and irrational classification distinguishing between recipients of Medicare and Medicaid on the one hand, and recipients of VA-funded medical care on the other.

60.  That classification bears no rational connection to any legitimate governmental interest, and, accordingly, fails to satisfy the equal protection guarantees of the Fifth Amendment.

## COUNT IV – MANDAMUS

61.  Plaintiffs repeat and reallege the allegations set forth within paragraphs 1 through 42 of this Complaint as if fully set forth herein.

62.  This is a complaint seeking mandamus relief. Specifically, Plaintiffs seek to compel the Secretary to issue a directive requiring all VA medical centers within Florida to comply with Florida law and submit to inspections by AHCA, an objective, independent governmental authority.

63.  Pursuant to 28 U.S.C. § 1361, district courts have jurisdiction to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the

Plaintiff[s]."   28 U.S.C. § 1361; *Huffstutler v. Bergland*, 607 F.2d 1090, 1092 (5th Cir. 1979). (In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as precedent all of the decisions of the former Fifth Circuit decided prior to October 1, 1981.)  In a mandamus action, subject matter jurisdiction is statutorily conferred and sovereign immunity is waived.

64.     The Secretary of the VA has been ordered by Congress to "ensure that the system will be managed in a manner to ensure that the provision of care to enrollees is timely and acceptable in quality." 38 U.S.C. § 1705(b)(3).

65.     The Secretary has failed to do so, and therefore, his failure has violated the VA's Patients' Rights and the equal protection, and substantive and procedural due process guarantees of the Fifth Amendment to the United States Constitution, as described above.

66.     The Secretary's failure to manage the VA system so that the provision of care to veterans and their family members is "timely and acceptable in quality" pursuant to 38 U.S.C. § 1705(b)(3) can be largely redressed through the simple act of ordering VA Medical Centers to comply with state laws regarding public agency inspection of hospitals and investigation of consumer complaints relating to hospitals.

67.     As described above, the VA's Undersecretary of Health, acting at the direction of the Secretary, recently issued analogous similar directive.  VHA Directive 2012-022, which remains in effect, directs that "all VA medical centers … must comply with their own state laws for reporting abuse and neglect."

68.     The Secretary should be compelled to issue a directive requiring all VA medical centers within Florida to comply with Florida law and submit to inspections by AHCA, an objective, independent governmental authority.  Failure to do so results in the deprivation of the

constitutional and statutory rights of disabled veterans. Furthermore, the VA and the Secretary are not above the law. Instead, when operating within Florida, the VA and the Secretary are obligated to comply with the duly-enacted state public health and safety laws, at least in circumstances where state law has not been preempted.

69.    Congress has not preempted the authority of states to regulate hospitals located within their respective territorial boundaries, even to the extent those hospitals may be operated by separate states or the United States.

70.    As such, the State of Florida, through AHCA, is entitled to regulate all hospitals located within Florida, and, accordingly, AHCA is entitled to such an Order from this Court compelling the VA and the Secretary to comply with Florida law by providing AHCA with a right of access to VA Medical Centers located within Florida.

71.    The VA and the Secretary have unlawfully prevented AHCA from performing its clear statutory duty to inspect Florida hospital premises, review Florida hospital records, investigate veterans' complaints, and take other lawful actions to protect the public health, welfare, and safety of all Florida residents, including Florida's veterans and their family members.

72.    Plaintiffs have no other adequate remedy available.

73.    Plaintiffs have no other avenues of relief.

74.    Plaintiffs are thus entitled to mandamus to compel the VA and the Secretary to issue a directive to provide access by AHCA, an objective, independent governmental authority, to VA Medical Centers in furtherance of AHCA's duties to protect public health and safety in the maintenance and operation of hospitals in Florida.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Hall, Dickerson, and AHCA request this Court grant the following relief:

A.     Issue an injunction compelling the VA and the Secretary to provide AHCA, an objective, independent governmental authority, access to VA Medical Centers in furtherance of AHCA's duty to protect public health and safety in the maintenance and operation of hospitals in Florida;

B.     Issue a writ of mandamus directing the VA and the Secretary to allow AHCA, an objective, independent governmental authority, to inspect VA Medical Centers within Florida, review records, or take any other actions consistent with AHCA's oversight of hospitals in Florida;

C.     Award Plaintiffs the costs of this action, including attorneys' fees; and

D.     Award Plaintiffs such other relief as may be just and proper.

RESPECTFULLY SUBMITTED,

AGENCY FOR HEALTH CARE
ADMINISTRATION

STUART F. WILLIAMS
General Counsel
Fla. Bar No. 670731
2727 Mahan Drive #3
Tallahassee, FL 32308
(850) 412- 3630

NANCY HALL AND
ROLAND DICKERSON

ROBERT N. CLARKE, JR.
Fla. Bar No. 0592900
ERIK M. FIGLIO
Florida Bar No. 0745251
*M.D. Fla. application pending*
TIFFANY A. RODDENBERRY
Florida Bar No.  0092524
*M.D. Fla. application pending*
Ausley & McMullen, P.A.
Post Office Box 391
Tallahassee, FL  32301
(850) 224-9115

22